Mr. Justice Miller
delivered the opinion of the court:
This is the first appeal from the Court of Claims which we have been called upon to consider since the rules framed by this court regulating such appeals, and the inconsistency between the record presented and the requirements of those rules calls for some observations in this place.
This case, having been decided before they were published, comes under the provisions of the second rule. That rule requires, in addition to the pleadings of the parties and the orders of the court, a specification of the matters alleged for error to be certified by the court, if presented to it correctly by the appellant, and if not correctly stated by him, to be modified according to the truth of the case by the court. The object of this rule, as well as the first, is to present in simple form the questions of law which arose in the progress of the case, and V’hieh were decided by the court adversely to appellant. Only such statement of facts is intended to be brought to this court as may he necessary to enable it to decide upon the correctness of the propositions of law ruled by the Court of Claims, and that is to he presented in the the shape of the facts found by that court to be established by the evidence, in such form as to raise the legal question decided by the court. It should not include the evidence in detail.
We have here, beside this simple statement, a record of two hundred and forty pages of printed matter, of which it is fair to say that two hundred are details of evidence excluded by the rule. We were inclined at first to dismiss the appeal for want of a proper record, but upon a closer examination it was discovered that the court below had *540 in good faitb complied with the rule, so far as to give the certified statement of the facts found, and of their legal conclusions thereon, and this, with the pleadings, judgment, and other orders in the case, enables us to examine the alleged error in the rulings of the court, within the principles we have stated.
The court, however, has, at the request of claimant’s counsel, returned the evidence on both sides, which makes the bulky and useless part of the record. We take this occasion to say, that we shall adhere strictly to the rules we have prescribed, and shall regard no other matter found in the transcripts sent to us than what they allow, and that in proper cases the costs of the useless part of the record will be taxed against the party who brings it here.
With these preliminary remarks, we proceed to examine the merits of the case. It is a claim against the United States founded on an award. The statement of facts by the court below informs us that “ the claimant has not seen proper to submit any evidence to sustain his original cause of action, but rests his case entirely upon the validity and conclusiveness of the award made by the Secretary of War.”
Among other conclusions of law, the court held the following in reference to this award, which, as they dispose of the case, are all that we need consider:
“ 1st. That by including in the award the value or price of the real estate upon which the brick-yard was located, Floyd exceeded the powers conferred upon him by the joint resolutions of Congress.
“ 2d. That having commingled such allowances with the general finding in such manner as to be incapable of separation, it thereby vitiated the whole award.' '■
“ 4th. Floyd having thus exceeded the powers conferred upon him, it was competent for Congress to disaffirm his acts and revoke the authority conferred upon him, by a repeal of the resolution under which he acted.”
That part of the record which is here decided not to be within the submission is thus stated in the award itself: “ It must be remembered that when Mr. De Groot’s contract was surrendered, he delivered to the United States the brick-yard at Hunting Park, with its appurtenances, machinery, and improvements. All these he would have retained had his contract been carried out. But this property was surrendered to the United States in compliance with the requirements of the joint resolution of March 3, 1857. It was, I think, clearly the intention of Congress to make compensation for the loss which he *541 thus sustained. And, accordingly, in addition to the damages already allowed, it is proper to refund to Mr. De Groot such items of expenditure as were necessarily involved in the purchase and improvement of liis brick-yard and its appurtenances. These are stated on the schedule, which is supported by vouchers, amounting to.... $29, 323 22
Add estimated profits. 86, 922 81
Add price of brick delivered and surrendered by De Groot. 28,603 34
Total amount. #144, 852 37”
The award then deducts certain payments made, leaving a balance of $119,234 46.
The joint resolution above mentioned of March 3, 1857, lies at the foundation of this claim, and it authorized the Secretary of the Treasury to settle and adjust with all the parties respectively interested therein, on principles of justice and equity, all damages, losses, and liabilities incurred or sustained by said parties on account of their contract for manufacturing brick for the Washington aqueduct, and contained this provision : “ That the said parties first surrender to the United States all the brick made, together with all the machines and appliances, and other personal property, prepared for executing the said contract, and that said contract be cancelled.”
It is pretty clear that without this proviso the Secretary could have acted on no other principle than that of compensating the parties interested for losses and damages growing out of a suspension or abandonment of the contract by the government, and that this must have been based upon the position of the parties as they stood at the time the resolution passed. What brick the claimants had delivered would have been the property of the United States. All the brick they had on hand not delivered, with the materials, tools, machines, and grounds, would have been the property of claimants, and the damages growing out of this branch of the inquiry would have been the loss sustained by these being rendered useless or less valuable to their owners, because no longer required in fulfilling the contract to make brick.
In what respect, then, does the proviso change this basis of estimating damages 1 It changes it by requiring the claimants to transfer to the United States certain things they were using in the manufacture of brick for the government, and allowing compensation for the value of those things, instead of damages for their deterioration. The things thus to be surrendered were “ all the brick made, together with all the *542 machinery and appliances, and other personal property prepared for executing the contract.”
It is not possible to hold that the land on which the bricks were made, or any improvement on it which had become part of the reality, comes within any of the classes of property here enumerated. It was not bricks; it was not machinery or appliances, and it was not personal property. The phrase “ other personal property ” implies that only personal property had been previously described,
It is true that the Secretary of War, in making his award, did not derive his power to act as arbirator from the joint resolution which we have been construing, but from another joint resolution of June 15, 1860. The first resolution referred the matter to the Secretary of the Treasury, and that officer having made his award,,Mr. De Groot, after receiving under it $7,576, refused to abide by it, and applied to Congress for further relief. That body referred his claim to the Secretary of War, by the resolution of June 15, 1860, but directed him to proceed in the further execution of the resohttion of March 3,1857, and to indemnify De Groot for such losses, liabilities, and damages as by virtue of said joint resolution he was entitled to receive. It will thus be seen, that while the tribunal was changed, it was to be governed by the principles prescribed by the resolution which we have just construed.
The Secretary of War, then, manifestly exceeded his powers as arbitrator when he awarded to claimant the value of the real estate on which the brick-yard was located, and the money involved in the purchase of it by said claimant.
It is, however, not always that an award is invalid because in some respects it exceeds the submission, for it is said that if the part which is in excess can be clearly separated from the remainder which is within the submission, the latter may stand.
This, as a general rule, is true, but it is subject to some qualifications, one of which is expressed by Chief Justice Marshall, spéaking for this court in the case of Camochan v. Christie, (11 Wheaton, 446,) to the effect that the award to be valid ought to be in itself a complete adjustment of the controversies submitted to the arbitrators.
There is no means by which the sum allowed by the Secretary for this land can be separated from the other allowances made for the personal property, machines, and appliances transferred by claimant to the United States. They are all summed up in one grand item of $29,323 22. What proportion of this item is for the land it is impossible to tell. If we reject the whole of this item, then the claimant has *543 no allowance for the machines, appliances, and personal property transferred to the government, and for the real loss in the purchase of land, and improvements placed on it for this specific purpose, the value of which must be much diminished by diverting.it from that use.
It thus appears that the arbitrator has exceeded his authority in some respects, that he has failed to award as to other matters submitted to him, and that in the award made, these matters cannot be distinguished from each other.
The United States cannot, after having twice referred these matters to arbitration — the second time on account of the dissatisfaction of the claimant with the result of the first — be bound now to accept an award which clearly does not dispose of part of the demands submitted, and which allows large sums for matters not submitted.
If these views be sound, the two first propositions of law decided by the Court of Claims were well decided.
We think the fourth proposition equally clear.
The government of the United States cannot be sued for a claim or demand against it without its consent. This rule is carried so far by this court, that it has been held that when the United States is plaintiff in one of the federal courts, and the defendant has pleaded a set-off which the acts of Congress have authorized him to rely on, no judgment can be rendered against the government, although it may be judicially ascertained that on striking a balance of just demands the government is indebted to defendant in an ascertained amount. And if the United States shall sue an individual in any of her courts, and fail to establish a claim, no judgment can be rendered for the costs expended by the defendant in his defence. .
If, therefore, the Court of Claims has the right to entertain jurisdiction of cases in which the United States is defendant, and to render judgment against that defendant, it is only by virtue of acts of Congress granting such jurisdiction, and it is limited precisely to such cases, both in regard to parties and to the cause of action, as Congress has prescribed.
It is true that ordinarily, when we seek for the foundation of this jurisdiction, we look to the general laws creating the court, and defining causes of which it may have cognizance. But it is equall}1- true that whenever Congress chooses to withdraw from that jurisdiction any class of cases which had before been committed to its control, as it has done more than once, it has the power to do so, or to prescribe the rule by which such cases may be determined. Its right to do this in regard to any particular case, as well as to a class of cases, must *544 rest on the same foundation; and no reason can be perceived why Congress may not at any time withdraw a particular case from, this cognizance of that court, or prescribe in such case the circumstances under which alone the court may render a judgment against the government.
The Court of Claims, .in the adjudication of the ease before us, has be.en acting under one of these special acts of the legislative department. A third joint resolution on the subject of this claim was passed by Congress and approved July 21, 1861, some months after the award of the Secretary of War was published. This resolution declares “ that the joint resolution approved June 15,1860, for the relief of William H. De Gioot be, and the same is hereby, repealed, and that the Secretary of War be, and he is hereby, directed to transmit all papers in his department relating to the case of said William H. De Groot to the Court of Claims for examination.”
The case being thus transferred from the Secretary of War to the Court of Claims, with a repeal of the resolution under which the Secretary had acted, must be considered as coming into that court with the limitations prescribed by that resolution. This shows very clearly that Congress intended that no judgment should be rendered against the government on the award of the Secretary of War, but that the examination to be made by the Court of Claims should be free from that embarrassment. Could that court entertain jurisdiction of the case, and violate this requirement ?
It is said by the claimant that the ease did not come into that court under that resolution, but was brought there by his own petition. But, however it may have come there, the rule prescribed by Congress adheres to it, if Congress had the right to prescribe it. Entertaining no doubt of the power of the legislative body to define the terms on which judgments may be rendered against the government as to classes of cases, or as to individual cases, we think the Court of Claims was bound to accept the resolution of February, 1861, as the law of the case in that court. The effect of this resolution on the award, if it should ever come in question in a court not limited by the restrictions which govern that court, we need not decide.
As we can only consider, here, what judgment that court should, have rendered, we conclude that its judgment was right, and it is therefore affirmed.